BEFORE THE SECOND DIVISION, MAY 11, 1955

No. 59040.—Midhurst Importing Corp. v. United States, petition 7144–R (New York).

RAO, Judge: This is a petition filed pursuant to the provisions of section 489 of the Tariff Act of 1930 for the remission of additional duties assessed for undervaluation of an importation of decorated chinaware.

It appears from the record that the merchandise in question was exported from England on June 29, 1951, and entered on July 12, 1951, at the invoice unit values which, in fact, represented prices prevailing prior to March 19, 1951. Appraisement was made on the basis of new and higher unit prices, effective on and after March 19, 1951.

At the trial, two witnesses testified on behalf of petitioner. The first of these was Richard H. Adams, secretary of Midhurst Importing Corp., whose familiarity with the instant importation, as well as with the prices of chinaware imported from England by his company, was established. This witness stated that the shipper issues to his customers a price list in the form of a pattern program, a photostatic copy of which is in evidence as petitioner's exhibit 1. With the aid of a permanent price booklet (petitioner's exhibit 2), the pattern numbers and code letters on the pattern program can be translated into the price in terms of pounds, shillings, and pence for each purchased item.

Upon the receipt from the shipper of petitioner's exhibit 1, showing new prices prevailing on and after March 19, 1951, petitioner forwarded copies to the appraiser and to the broker, both of whom had copies of the permanent price booklet. This was done prior to the entry of the merchandise at bar.

It appears that, as the result of an error on the part of the shipper, the instant importation was invoiced in pattern numbers representing the price scales prevailing prior to March 19, 1951. This error was not detected by petitioner for the reason that, owing to a shortage of help, all invoices were not checked. In-

stead, the commercial and consular invoices with a letter of transmittal were forwarded to Meadows Wye & Co., petitioner's customs broker. The latter submitted to the appraiser a request for information as to values, which was returned with a notation signifying entry should be made in accordance with the invoice prices. Accordingly, and without further investigation, entry was, in fact, made at the prices which were listed on the invoice.

Sometime during the month of July 1951, Adams received a notice from the appraiser, on Form A–16, in evidence as petitioner's exhibit 3, advising that appraisement would be based on the new price scales, and that the importer was entitled to amend the entry within 30 days, if it so desired. This form was forwarded to the broker, attention of its employee, a Mr. Graham, together with additional copies of the pattern program and the permanent price scale. However, no amendment of the entry was ever filed.

Mr. Adams further stated that there had been 156 previous shipments of this type of merchandise, all entered without question as to values. He, therefore, had no reason to doubt the prices indicated on the price lists and so made no effort to ascertain the correct values of the instant merchandise prior to entry. He also testified that during the period between the date of entry and the date of appraisement he gave the customs service all the information which he had with regard to the value of this particular merchandise; and that he had no intention to defraud the revenues of the United States or to misrepresent the facts pertaining to the value of this merchandise.

The failure of the customs broker to carry out petitioner's instructions to amend the entry was explained by witness Joseph A. McLaughlin, treasurer of Meadows Wye & Co. He stated that Mr. Graham, the employee who handled the transaction, had been ill for the entire period from 1951 to 1954, and that he died in June 1954. His illness caused him to be absent from the office a great part of that time. Although Graham's work was supervised by McLaughlin, and all matters which had accumulated were taken care of, he [McLaughlin] did not come across the file pertaining to the entry at bar, because it was not kept with the current work in baskets on Graham's desk, nor in the file cabinet. The file was eventually discovered in Mr. Graham's desk drawer. Mr. Graham did not mention to the witness that he had received Form A–16 from petitioner, with instructions to amend. Neither did he ever indicate that additional work remained to be done in behalf of petitioner. Graham's mental lapses were ascribed to his poor physical condition and his frequent absences from work.

At the conclusion of the trial, counsel for respondent made the following statement:

Mr. O'Neill: The Government has no proof to offer but I would like to state for the purposes of the record that all information and advice coming to the Assistant Attorney General from Treasury and Customs sources including Examiner Gross are most highly favorable to the importer.

The measure of an importer's burden to establish successfully his right to the remission of additional duties assessed for undervaluation of imported merchandise may be found in the following oft-repeated quotation from the case of *Wolf & Co.* v. *United States*, 13 Ct. Cust. Appls. 589, T. D. 41453:

\* \* \* Summarized, these adjudged cases announce certain fundamental facts which the petitioner must establish if he is to obtain relief: First, He must show that in undervaluing his goods he was acting in entire good faith; second, that there were no facts or circumstances known to the petitioner when he made his entry which would cause a prudent and reasonable person to question the correctness of the values given by him; third, that he has made to the collector in making his entry, a full and candid disclosure of all the material facts in his possession bearing upon the value of the merchandise imported.

We are of opinion that petitioner herein has fully complied with these requirements. Most significant in convincing us of petitioner's good faith is the fact that when the new pattern program was received from the shipper, copies were forwarded to the appraiser. That official, with the aid of the permanent price booklet, was then in position to ascertain the true value of all merchandise exported on and after March 19, 1951. In other words, petitioner, itself, provided the appraiser with the data which revealed that the entered values in this shipment were too low. Not concealment, but rather complete and candid disclosure, characterizes petitioner's actions in this case.

The entry of the instant merchandise at less than its true value was occasioned by an unfortunate combination of circumstances,—the shipper's error; the fact that the price list was a somewhat cryptic document requiring checking against a code; the shortage of help in petitioner's firm; and the illness of the broker's employee, causing failure to comply with petitioner's instructions to amend the entry,—but no lack of good faith nor intent to deceive is thereby evidenced.

One hundred and fifty-six prior entries of similar merchandise were made by petitioner or in its behalf, without challenge as to value. There were no facts or circumstances known to petitioner which might have been calculated to put it on notice that the invoice prices of this shipment warranted checking.

From all of the evidence in this case, we are satisfied that undervaluation was not occasioned by any intention to defraud the revenues of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. The petition is, therefore, granted.

Judgment will be entered accordingly.